COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Senior Judge Hodges
Argued at Richmond, Virginia


JOSEPH LEWIS McCOY

MEMORANDUM OPINION* BY
v.    Record No. 0858-01-2          JUDGE JAMES W. BENTON, JR.
                                        AUGUST 6, 2002
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Thomas N. Nance, Judge

Brian J. Grossman (Eck, Collins & Marstiller,
on brief), for appellant.

Linwood T. Wells, Jr., Assistant Attorney
General (Randolph A. Beales, Attorney
General, on brief), for appellee.


The sole issue presented by this appeal is whether the evidence was sufficient to prove Joseph Lewis McCoy possessed heroin found in another person's apartment.  We reverse the conviction.

I.

A grand jury indicted Joseph Lewis McCoy for possession of heroin with the intent to distribute in violation of Code § 18.2-248.  At trial, the Commonwealth's evidence proved that several police officers went to a building to execute search warrants at two apartments.  In the backyard of the building, they

---

    * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

encountered two men, one of whom had a walkie-talkie.  No evidence associated the men with the apartments to be searched.  After ordering the men to the ground, the officers simultaneously approached the apartments and gained entry to the downstairs apartment by battering the rear door, which had been fortified with a wooden board.  When the officers entered the apartment through the kitchen, they loudly announced their presence.  An officer went into a hallway and hesitated because a dog was there.  He then saw McCoy and another man run from the middle room to the living room.  Entering the living room, the officer saw McCoy and two men seated on the sofa.  The officer testified that the door in the living room led to the exterior and to stairs going to the apartment upstairs.  He also testified that the men did not try to escape from the apartment.

In the middle room on a table, the officers found pieces of heroin and "individually knotted bag corners" containing heroin. Currency and packaging material were scattered throughout the room.  In the living room, the officers discovered "a pile of approximately twenty hits of the heroin . . . partially shoved under a rug."  Two of the "hits" were in plain view, and the other eighteen were "under the carpet."  A trail of small knotted bags went from the middle room to the living room.  One of the men sitting on the sofa near McCoy had heroin in his pocket.

When the officers arrested McCoy and searched him, the officer found no heroin on McCoy's person or in his clothing.

-

After the officer advised McCoy of Miranda rights and asked what he was doing in the apartment, McCoy "said that he was visiting his girlfriend [in the] upstairs . . . apartment . . . and that he had made breakfast and had come down to visit the girl that lives in [the downstairs] apartment . . . , who was not present there." McCoy said "he had been there . . . approximately a half an hour." When "asked if he knew what was going on there[, McCoy] . . . said he didn't." Later, at the police station, when asked whether he used drugs, McCoy said "he didn't abuse it but he was using every day." The officer did not "recall exactly whether [McCoy] specified heroin or not" but thought "it was just drugs."

In the upstairs apartment, the officers discovered a handgun in a bedroom under a mattress, heroin "in plain view on a dresser" in that bedroom, and syringes in the top drawer of that dresser. The only person present in the upstairs apartment was a woman identified as McCoy's "girlfriend." When the officers asked McCoy if he lived upstairs, McCoy said he did not and indicated "he stayed there off and on but didn't live there." McCoy also said he did not know anything about the items the officers seized upstairs.

At the conclusion of the evidence, the trial judge granted McCoy's motion to dismiss the charge of intent to distribute and denied McCoy's motion to dismiss the possession charge. The trial judge convicted McCoy of possession of heroin. This appeal followed.

-

II.

The evidence did not prove McCoy had actual possession of the heroin. In addition, no evidence proved McCoy lived in either apartment. "To support a conviction based upon constructive possession, 'the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control.'" Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)).

McCoy was not present in the upstairs apartment when the officers found heroin in the bedroom. Only the woman identified as McCoy's "girlfriend" was present when the heroin was found. As in Drew and Garland v. Commonwealth, 225 Va. 182, 300 S.E.2d 783 (1983), this evidence was insufficient to prove McCoy constructively possessed the heroin in the upstairs apartment.

Although McCoy was in the downstairs apartment, no evidence tended to show the heroin was subject to McCoy's dominion and control. As the Supreme Court has held, "mere proximity to a controlled drug is not sufficient to establish dominion and control." Drew, 230 Va. at 473, 338 S.E.2d at 845 (citing Wright v. Commonwealth, 217 Va. 669, 670, 232 S.E.2d 733, 734 (1977); Fogg v. Commonwealth, 216 Va. 394, 395, 219 S.E.2d 672, 673 (1975)).

-

In many respects, the facts and circumstances concerning the heroin in the downstairs apartment resemble those in Huvar v. Commonwealth, 212 Va. 667, 187 S.E.2d 177 (1972). There, the Supreme Court ruled as follows:

> The only evidence which connects defendant with the drugs involved here is his presence in the apartment when they were found, and the fact that he had the appearance of one who may have been using drugs. There is no evidence that defendant owned, possessed or exercised any control over these specific drugs.
>
> It is the theory of the Commonwealth that the police interrupted a "pot party." One could reasonably reach this conclusion from the evidence. However, the mere presence of defendant at the party is not sufficient to convict him of actual or constructive possession of the drugs that were found there. It was not his apartment. Those present were not shown to have been his guests or there at his invitation. None of the prescription containers in which some of the drugs were found bore his name on their labels. He made no statement, committed no act and indulged in no conduct from which the inference could be fairly drawn that he possessed or controlled the drugs which the police found.

Id. at 668, 187 S.E.2d at 178.

Likewise, in Wright, the defendant was in another person's apartment. When the police arrived, the defendant was in a bedroom where heroin was openly displayed and a person was using heroin. 217 Va. at 669, 232 S.E.2d at 733. Finding a lack of evidence to prove the defendant constructively possessed the heroin, the Court held as follows:

-

In the present case, the evidence is insufficient to support the conviction. Wright did not live in the apartment, no heroin was found in his actual possession, and there is no evidence that the heroin was shared with Carter or that it was under Wright's dominion or control. To infer that Wright put the heroin under the dresser when warned that the police were on the premises would be to engage in speculation and conjecture. The interval of time between the closing of the door to the bedroom by Carter's wife and the entrance of the police must have been short because Carter had not dropped the syringe before the officers appeared. Mere proximity of Wright to the packages was not sufficient to establish constructive possession, and the conviction of possession with intent to distribute cannot be sustained.

Id. at 670-71, 232 S.E.2d at 734.

As in those cases, the evidence in this record was insufficient to prove McCoy exercised dominion and control over the heroin in the downstairs apartment he was visiting or in the upstairs apartment where his female friend lived. Accordingly, we reverse the conviction and dismiss the indictment.

Reversed and dismissed.

-